GASKINS, J.
 

 | ,The defendant, Anthony Glen Wilson, was convicted of simple burglary. He was originally sentenced to the maximum sentence of 12 years at hard labor. He was subsequently adjudicated a fourth felony offender and, as such, sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals. We affirm the defendant’s conviction for simple burglary, his adjudication as a fourth felony offender, and his sentence of life imprisonment.
 

 FACTS
 

 On the morning of September 9, 2004, the owner of a Ford Explorer discovered the defendant sleeping in his vehicle. The rear passenger window had been broken out of the locked vehicle. The owner called the police. Two deputies responded; they woke the defendant and asked him to get out of the vehicle. Found in the vehicle was a black bag which did not belong to the owner of the Explorer; it contained bolt cutters and a black ski mask. According to the vehicle owner, the glove box had been opened and gone through. A bottle of cologne and some change were missing from the vehicle. The cologne was found either on the defendant or in his bag, while the missing coins were found in the bag.
 

 The defendant was arrested and charged with simple burglary. Following a jury trial in July 2007, he was convicted as charged. He was sentenced to 12 years at hard labor, the maximum sentence for the offense. A motion to reconsider sentence was denied. Subsequently, the state charged the defendant as a multiple offender. After a hearing, he was adjudicated a fourth felony offender and sentenced to life imprisonment at |.¿hard labor without benefit of parole, probation or suspension of sentence. A motion to reconsider sentence was denied.
 

 The defendant appeals, asserting nine assignments of error.
 

 SUFFICIENCY OF EVIDENCE
 

 Law
 

 The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.
 
 Jackson v. Virginia,
 
 443 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Brown,
 
 43,916 (La.App. 2d Cir.2/25/09), 4 So.3d 301.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude
 
 *215
 
 beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Owens,
 
 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 1998-2723 (La.2/5/99), 737 So.2d 747.
 

 | ;iThe statutory rale with regard to the use of circumstantial evidence to sustain a conviction is found in La. R.S. 15:438. This section provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 

 The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582;
 
 State v. Allen,
 
 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein. La. R.S. 14:62(A). In addition to the defendant’s presence by means of an unauthorized entry, the prosecution must prove beyond a reasonable doubt that the intruder had the specific intent to commit a theft or felony therein in order to support a |4conviction of simple burglary.
 
 State v. Bell,
 
 42,394 (La.App. 2d Cir.12/5/07), 972 So.2d 1207.
 

 Although intent to commit a burglary is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances.
 
 State v. Robinson,
 
 29,-488 (La.App. 2d Cir.6/18/97), 697 So.2d 607, writ
 
 denied,
 
 1997-1845 (La.12/12/97), 704 So.2d 1200. A taking is not required.
 
 State v. Wright,
 
 36,635 (La.App. 2d Cir.3/7/03), 840 So.2d 1271. Displacement of the victim’s possessions may be indicative of the specific intent to commit a theft.
 
 State v. Bell, supra; State v. Wright, supra.
 

 Voluntary intoxication is a defense to a prosecution for simple burglary only if the circumstances indicate that it has precluded the presence of specific criminal intent. La. R.S. 14:15(2). The defendant has the burden of proving the existence of that condition at the time of the offense. The specific legal question is not when the requisite specific intent was formed, but rather whether, at the time the unauthorized entry occurred, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit a theft or felony therein.
 
 State v. Davenport,
 
 08-463 (La.App. 5th Cir.11/25/08), 2 So.3d 445;
 
 State v. Godbolt,
 
 2006-0609 (La.App. 1st Cir.11/3/06), 950 So.2d 727. When circumstances exist that intoxication could have precluded specific intent, the burden shifts to the state to show beyond a reasonable doubt that specific intent was present. Whether intoxication is sufficient to negate specific intent is a question for the trier of fact.
 
 State v. Davenport, supra.
 

 
 *216
 

 15Discussion
 

 The defendant argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he had the specific intent to commit a theft. He contends that the evidence instead indicates that he entered the vehicle to sleep or that he was so intoxicated when he entered it that he lacked the requisite specific intent and “slept off’ his intoxication.
 

 The state presented the testimony of the vehicle owner, a responding deputy, and an evidence officer for the sheriffs office. The owner stated that he locked the Explorer the night before. When he found the defendant — a complete stranger— asleep in the vehicle the next morning, one of the windows had been broken out. There was a black bag in the Explorer that did not belong to the owner. The bag contained bolt cutters and a ski mask; the deputy testified that these items are tools commonly used in burglaries. According to the owner, the glove box had been opened and rifled. A bottle of cologne and some change that he kept in the console were missing. The cologne was found either in the defendant’s pocket or in his bag.
 
 [1]
 
 The change was eventually found in the defendant’s bag.
 

 The defendant cites
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987), and
 
 State v. Wright, supra,
 
 in support of his argument that the evidence does not exclude every reasonable hypothesis of innocence. However, in both of the cited cases, there was no evidence of displacement of items in the houses | ¿into which those defendants made unauthorized entries. Also, in
 
 Wright, supra,
 
 there was no evidence of forced entry. Here the owner testified that a window in the locked vehicle had been broken out, that the vehicle had been rifled, and that items had been displaced.
 

 As to the defendant’s claim of voluntary intoxication as a defense, the only evidence of intoxication was the defendant’s self-serving statement to the police that he had been drinking. The deputy who arrested the defendant testified at trial that he had had the opportunity to observe persons under the influence of alcohol or drugs. According to the deputy’s testimony, the defendant was coherent, able to answer questions, and appeared to understand his rights when they were read to him. The defendant did not testify at trial or otherwise present evidence of his alleged intoxication. The circumstances do not establish that the defendant was intoxicated at the time of the offense and that any such intoxication precluded the presence of the specific intent required in simple burglary. To the contrary, the defendant’s carrying of burglar tools, breaking the back car window, rifling through the console and glove box, and taking the money and cologne, all indicate that the defendant did have the specific intent to commit a theft.
 

 Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the defendant made an unauthorized entry into the Explorer with the specific intent to commit a theft.
 

 This assignment of error is without merit.
 

 
 *217
 
 i7admission of coins
 

 Law
 

 La. C.E. art. 901(A) states that:
 

 The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 

 To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case.
 
 State v. Collins,
 
 43,645 (La.App. 2d Cir. 10/29/08), 998 So.2d 765, 775;
 
 State v. Toney,
 
 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387.
 

 It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The state need only establish by a preponderance of the evidence that the object is the one connected with the case.
 
 State v. Collins, supra.
 

 Identification can be visual or by chain of custody of the object. The identification need not be absolute, certain or wholly unqualified. Where there is some evidence for identification purposes, the objection to the sufficiency goes to the weight rather than admissibility.
 
 State v. Beaner,
 
 42,532 (La.App. 2d Cir. 12/5/07), 974 So.2d 667, 685,
 
 writ denied,
 
 2008-0061 (La.5/30/08), 983 So.2d 896;
 
 State v. Lawrence,
 
 40,278 (La.App. 2d Cir.3/15/06), 925 So.2d 727, 747.
 

 |
 
 (¿Discussion
 

 The defendant argues that the coins found in the black bag should not have been admitted over his objection as they were not properly identified and a sufficient chain of custody was not established. The defendant emphasizes that the police report did not mention the missing change and it was not included in the items logged into evidence.
 

 The state asserts that the testimony of the vehicle owner demonstrates he did inform the officers of the missing change. It maintains that a sufficient chain of custody existed to connect the change to the instant case because the deputy found the bag, sealed it, and checked it into evidence. When the bag was later unsealed and searched, the coins—58 cents in pennies— were discovered.
 

 The owner of the Explorer testified that he reported missing change to the police. However, the deputy did not recall such a report and made no mention of the missing change in his police report. While the vehicle owner could not testify as to the exact amount of change taken, he was definite that the change he kept in the console was gone. Since the black bag was seized, sealed, and not re-opened until the change was discovered, a sufficient chain of custody was established. The state must only show a connection by a preponderance of the evidence. We find that the state has met this burden.
 

 This assignment of error lacks merit.
 

 _[c|JURY CHARGE
 

 Law
 

 According to La. C. Cr. P. art. 802, the court shall charge the jury as to the law applicable to the case; that the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law
 
 *218
 
 as given by the court; and that the jury alone shall determine the weight and credibility of the evidence. Under La. C. Cr. P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. This ai’ticle also provides that the special charge need not be given if it is included in the general charge or in another special charge to be given.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. Mitchell,
 
 44,008 (La.App. 2d Cir.2/25/09), 4 So.3d 320. In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The defendant must show that: (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires that his conduct be evaluated from counsel’s perspective at the time of the occurrence. To show prejudice, a defendant must demonstrate that, but for counsel’s unprofessional conduct, the result of the proceeding would have been different.
 
 Strickland, sv,pra.
 

 |inA reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment.
 
 State v. Tilmon,
 
 38,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607,
 
 writ denied,
 
 2004-2011 (La.12/17/04), 888 So.2d 866.
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (PCR) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ellis, supra.
 

 Discussion
 

 The defendant asserts that he was prejudiced by the trial court’s failure to instruct the jury that it could accept part of a witness’ testimony and reject other parts. He claims he was also prejudiced by the lack of a charge concerning voluntary intoxication. The defendant claims his counsel’s failure to object to the jury instructions and request a special charge on voluntary intoxication amounted to ineffective assistance of counsel.
 

 The prosecution contends that the credibility charge given by the trial court was a fair statement which provided adequate guidance to the jury. The prosecution also argues that no evidence of intoxication sufficient to negate the defendant’s intent was introduced. As a result, the state argues |nthat jury instructions regarding intoxication would not have been appropriate.
 

 The jury instruction given on credibility was as follows:
 

 If you believe that any witness in the case has willfully and deliberately testified falsely to any material fact, then I charge you that you are justified in disregarding the entire testimony of such a witness, if there be one, as proving nothing and as unworthy of belief. To state this rule another way, you as jurors have the right to accept as true, or reject as untrue, the testimony of any witness.
 

 This record contains sufficient evidence to support a review of the defendant’s complaints at the appellate level. The jury instructions are almost identical to
 
 *219
 
 similar instructions ruled to be acceptable. See
 
 State v. Prestridge,
 
 399 So.2d 564 (La. 1981);
 
 State v. Walters,
 
 582 So.2d 317 (La.App. 4th Cir.1991),
 
 writ denied,
 
 584 So.2d 1171 (La.1991). There is no basis for asserting that the instructions were prejudicial.
 

 The defendant did not introduce evidence of his alleged intoxication. There-foi’e, a jury charge on the defense of voluntary intoxication in the instant case would not have been appropriate. See
 
 State v. Guillory,
 
 2000-00386 (La.App. 3d Cir.11/2/00), 773 So.2d 794,
 
 writ denied,
 
 2000-3334 (La.11/9/01), 801 So.2d 362.
 

 The facts do not support a finding that the defendant’s counsel should have objected to the jury instruction or requested a special charge of intoxication. Therefore, the defendant cannot demonstrate that his counsel was deficient.
 

 This assignment of error lacks merit.
 

 | ^PRESENCE OF DEFENDANT
 

 Law
 

 A criminal defendant charged with a felony has a right to be present “[a]t the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror.” La. C. Cr. P. art. 831(A)(3). However, the rights granted by La. C. Cr. P. art. 831 are not absolute. These rights can be waived by voluntarily absenting oneself or by not filing a contemporaneous objection. See
 
 State v. Sias,
 
 2003-891 (La.App. 3d Cir.12/10/03), 861 So.2d 829, and
 
 State v. Broaden,
 
 1999-2124 (La.2/21/01), 780 So.2d 349,
 
 cert. denied,
 
 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001).
 

 In
 
 State v. Sias, supra,
 
 the defendant was excluded from the judge’s chambers for jury challenging. The defendant alleged that his counsel’s failure to object was ineffective assistance of counsel. Using the
 
 Strickland
 
 analysis, the court determined that “[ijnasmuch as the defendant has not put forth sufficient evidence to show he was prejudiced by the jury challenging process, he has not met his burden of proof on his claim of ineffective assistance of counsel.”
 

 Discussion
 

 The defendant argues that it is not clear that the defendant was present during critical steps of the trial. The defendant asserts, and the transcript confirms, that the trial judge noted that the defendant was not present when he began questioning potential jurors about exposure to news | ^articles. The defendant argues that his counsel’s failure to object amounted to ineffective assistance of counsel.
 

 Although the minutes state the defendant was present, the transcript shows that the defendant was not in the courtroom when the trial judge first addressed the potential jurors concerning a newspaper article published in the morning newspaper; this is found at page 169 of the transcript. However, the transcript demonstrates that the defendant was present when the trial judge introduced the lawyers and the defendant to the veniremen before the lawyers commenced voir dire questioning; this is found at page 195 of the transcript. In the intervening pages of transcript, the trial judge addressed the prospective jurors on a variety of preliminary matters. In his opening remarks, the judge referenced the article in his general discussion of avoiding media accounts pertaining to the case. He then went on to divide the veniremen into panels and question them as to their basic qualifications to serve as jurors. When the judge asked at various points if anyone had read the article, the response was overwhelmingly negative. At one point, court was recessed
 
 *220
 
 and then reconvened later. The transcript does not indicate at what point the defendant entered the courtroom.
 

 Under the circumstances of the instant case, the defendant’s absence was of no consequence. Review of the record reveals no objection was made. Even if not objecting was ineffective assistance by defense counsel, the defendant has not shown that he was prejudiced by counsel’s failure to object to his absence.
 

 This assignment of error has no merit.
 

 | ^PROSECUTORIAL MISCONDUCT/ MOTION TO COMPEL
 

 Law
 

 The habitual offender statute, La. R.S. 15:529.1(D), provides in pertinent part:
 

 If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ... or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction ....
 

 The powers and duties of the district attorney are set forth in La. C. Cr. P. art. 61, which provides:
 

 Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
 

 The district attorney has the discretionary power to charge a defendant under the habitual offender law just as he has the initial unlimited power to prosecute “whom, when, and how” he chooses. The use of the habitual offender laws “provides an ancillary sentencing factor designed to serve important and legitimate societal purposes.” La. C. Cr. P. art. 61;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Brisco,
 
 2004-3039 (La.7/6/06), 933 So.2d 754;
 
 State v. Montgomery,
 
 42,432 (La.App. 2d Cir.9/19/07), 966 So.2d 127.
 

 A presumption of vindictive prosecution arises if the habitual offender bill can be explained only by a desire to punish or deter the |1sexercise of legal rights. See
 
 State v. Tassin,
 
 2008-752 (La.App. 3d Cir.11/5/08), 998 So.2d 278,
 
 writ denied,
 
 2008-2909 (La.9/18/09), 17 So.3d 385. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness.
 
 State v. Tassin, supra.
 

 If the prosecutor’s conduct is equally attributable to legitimate reasons, the defendant must prove actual vindictiveness. A mere opportunity for vindictiveness does not suffice.
 
 State v. Heard,
 
 36,191 (La.App. 2d Cir.7/17/02), 823 So.2d 454;
 
 State v. Montgomery, supra.
 
 A defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. In that regard, the court will examine the state’s actions in the context of the entire proceedings.
 
 State v. Heard, supra.
 

 Discussion
 

 The defendant argues that the state’s choice to charge him as a habitual offender amounted to improper prosecuto-rial vindictiveness. He claims the habitual offender bill of information was filed solely due to the state’s suspicions that the defendant was involved in another unprose-cuted crime many years before this present offense. The defendant argues that the
 
 *221
 
 trial court erred in denying his motion to compel answers to a bill of particulars regarding the motives for the filing of the habitual offender bill of information and in failing to grant his motion to quash the habitual offender bill of information due to prosecutorial vindictiveness. The defendant has failed to carry his burden of proof on this issue.
 

 11(iThere is no showing of a presumption of vindictiveness because the decision in this case to file a habitual offender bill of information was not explained only by a desire to punish or deter the exercise of legal rights. Further, the record shows that the choice to charge the defendant as a habitual offender was based upon legitimate reasons. The defendant had prior convictions for attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business, and possession of stolen things. The Habitual Offender Law only provides for four prior felonies. Therefore, the defendant was adjudicated a fourth felony offender.
 

 In addition, the defendant had an extensive criminal record containing many more arrests and convictions not used in adjudicating him a fourth felony offender. The record shows that the defendant was not only a proven habitual felony offender, but had a criminal history spanning 30 years. Due to the defendant’s proven record of recidivism, the state had legitimate reasons to file the habitual offender bill of information in this case.
 

 The defendant has also failed to show actual vindictiveness. He makes the bare allegation that the habitual offender bill of information was filed solely due to his suspected involvement in a prior offense for which he had not been prosecuted. The defendant offered no evidence to prove this allegation. He made the bare allegation that he has been treated differently from similarly situated defendants, but has offered no proof of this claim. Examining the state’s actions in the context of the entire proceedings, particularly in light of the fact that the defendant has a significant history of |17prior felonies, there is no showing of actual prosecutorial vindictiveness in this case. The trial court did not err in denying the motion to quash the bill of information or in failing to compel answers to the bill of particulars in this matter.
 

 This assignment of error lacks merit.
 

 SENTENCE FOR BURGLARY
 

 Law
 

 Regarding sentences under the habitual offender law, La. R.S. 15:529.1(D)(3) provides:
 

 When the judge finds that [the defendant] has been convicted of a prior felony or felonies or adjudicated a delinquent as authorized in Subsection A, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section,
 
 and shall vacate the previous sentence if already imposed,
 
 deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling. [Emphasis supplied.]
 

 Under this statute, a trial court is required to vacate the previous sentence if already imposed when the enhanced sentence is thereafter imposed for the substantive offense.
 
 State v. George,
 
 39,959 (La.App. 2d Cir.10/26/05), 914 So.2d 588,
 
 writ denied,
 
 2006-0707 (La.10/6/06), 938 So.2d 66. Where, as here, it is obvious that the trial court intended to increase
 
 *222
 
 the substantive sentence, and correction of the illegal sentence does not involve the exercise of sentencing discretion, the appellate court may amend to correct without remanding for resentencing. La. C. Cr. P. art. 882;
 
 State v. George, supra.
 

 11
 
 ^Discussion
 

 The defendant argues that the trial court erred in failing to set aside the originally imposed sentence of 12 years at hard labor for his simple burglary conviction in this matter. He claims that this nullifies the subsequently imposed life sentence following the habitual offender adjudication. The defendant contends that the case should be remanded to the trial court for resentencing. In the alternative, the defendant maintains that this court should set aside the original 12-year sentence.
 

 In this case, it is clear that the trial court intended to sentence the defendant to the mandatory life sentence as a fourth felony habitual offender. Correction of the illegal sentence does not involve the exercise of sentencing discretion. Accordingly, we vacate the defendant’s original 12-year sentence.
 
 [2]
 

 EXCESSIVE SENTENCE
 

 Law
 

 La. R.S. 15:529.1(D)(2)(c) states:
 

 Following a contradictory hearing, the court shall find that the defendant is: A fourth offender, upon proof of three or more prior felony convictions or adjudications of delinquency as authorized in Subsection A, or any combination thereof.
 

 La. R.S. 15:529.1(A)(l)(c)(ii) states in pertinent part:
 

 If the fourth felony and two of the prior felonies are ... a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be | ^imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
 

 La. Const, art. 1, § 20 provides in pertinent part:
 

 No law shall subject any person to ... cruel, excessive, or unusual punishment.
 

 A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey, supra.
 
 A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980);
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992).
 

 Louisiana’s judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness.
 
 State v. Dorthey, supra.
 

 The defendant argues that the two-pronged test for review of excessive sentences should apply. However, compliance with La. C. Cr. P. art. 894.1 is not mandated where the sentence is statutorily required.
 
 State v. Wilson,
 
 37,555 (La.App. 2d Cir.11/6/03), 859 So.2d 957,
 
 writ denied,
 
 2003-3232 (La.6/4/04), 876 So.2d 73.
 

 
 *223
 
 The Legislature enacted the Habitual Offender Law pursuant to its sole authority under La. Const, art. 3, § 1 to define conduct as criminal and to provide penalties for such conduct.
 
 State v. Wade,
 
 36,-295 (La.App. 2d Cir.10/23/02), 832 So.2d 977. See also
 
 State v. Heard, supra.
 
 The Habitual Offender Law has consistently been held to be constitutional and therefore, the minimum sentences the statute imposes upon multiple offenders are presumed constitutional, and should be accorded great deference by the judiciary.
 
 State v. Wade, supra; State v. Johnson,
 
 1997-1906 (La.3/4/98), 709 So.2d 672.
 

 The courts may declare a mandatory sentence excessive if the defendant shows by clear and convincing evidence that the facts rebut the presumption of constitutionality.
 
 State v. Wade, supra.
 
 This power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive.
 
 State v. Ponsell,
 
 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 2000-2726 (La.10/12/01), 799 So.2d 490;
 
 State v. Johnson, supra.
 

 To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances, this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 
 State v. Lindsey,
 
 1999-3302 (La.10/17/00), 770 So.2d 339,
 
 cert. denied,
 
 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001).
 

 Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if the defendant falls within those “rare” circumstances where a downward 121 departure is warranted.
 
 State v. Wilson, supra; State v. Burns,
 
 1997-1553 (La.App. 4th Cir.11/10/98), 723 So.2d 1013,
 
 writ denied
 
 1998-3054 (La.04/01/99), 741 So.2d 1282.
 

 In making this determination, while a defendant’s record of nonviolent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
 
 State v. Lindsey, supra.
 

 The trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism. The sentencing court’s role is not to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana’s constitution. See
 
 State v. Lindsey, supra.
 

 Discussion
 

 The defendant claims that the trial court erred in failing to acknowledge and consider his arguments that it could deviate below the statutorily mandated sentence set forth in the Habitual Offender Law and in imposing a cruel, unusual, and excessive sentence in violation of the Eighth Amendment to the United States Constitution and La. Const, art. 1, § 20. The defendant in this matter was proven to have five prior felony convictions. The present offense was his sixth felony conviction. One prior conviction, attempted distribution of cocaine, was a violation of the _j22Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more. A prior conviction was for simple burglary, punishable by imprisonment for 12 years or more. Also,
 
 *224
 
 the present conviction is for simple burglary. Therefore, the requirements of La. R.S. 15:529.1(A)(l)(c)(ii) were satisfied and resulted in the imposition of the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Although the prior felonies and the present offense do not involve crimes of violence, the defendant has an extensive criminal history including convictions for numerous serious felonies. This demonstrates that he is the type of recidivist that the Habitual Offender Law was designed to punish and deter.
 

 In addition to the crimes used as predicates for the habitual offender bill of information, the defendant had numerous felony and misdemeanor convictions and charges not contained in the bill of information. In 1978, when the defendant was 19 years old, he was convicted in California of committing a lewd act with a minor under the age of 14. His arrest record in California includes vehicular theft, receiving stolen property, possession of a controlled substance, and burglary. The defendant’s Louisiana criminal history includes a conviction for disturbing the peace and numerous other arrests. The felony convictions forming the basis for the habitual offender bill of information include attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business, and illegal possession of stolen things.
 

 | aaThe defendant has failed to show that he falls within those rare circumstances in which a downward departure from the mandatory life sentence is warranted. The defendant has been given numerous opportunities for rehabilitation and has chosen to continue a life of serious crime. Given the defendant’s extensive criminal history, the sentence in this case does not shock the sense of justice and does not constitute a needless and purposeless imposition of pain and suffering. Accordingly, we affirm the mandatory life sentence without benefit of parole, probation, or suspension of sentence imposed by the trial court in this matter under the Habitual Offender Law.
 

 CONCLUSION
 

 The defendant’s conviction for burglary is affirmed. Additionally, his adjudication as a fourth felony offender is affirmed, as is his sentence of life imprisonment as such.
 

 AFFIRMED.
 

 [1]
 

 . The owner testified that the cologne was discovered in the bag and kept by the police. The deputy stated that it was recovered from the defendant's back right pocket and returned to the owner. These minor discrepancies are irrelevant; in either case, the defendant had put the cologne in a place over which he exercised control in anticipation of his departure from the vehicle.
 

 [2]
 

 . On appeal, the defendant argues that the 12-year hard labor sentence imposed was cruel, unusual, and constitutionally excessive. Because we vacate the 12-year sentence, this argument is moot.